**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHEILA ALLEN, individually and on behalf of all others similarly situated, | Case No. 13-cv-08285 |
| Plaintiff, | Assigned to the Honorable Rebecca R. Pallmeyer |
| v. | Magistrate Judge Schenkier |
| JP MORGAN CHASE BANK, N.A., | |
| Defendant. | |

<u>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM**</u>

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

I.    INTRODUCTION ..................................................................................................... 1

II.   STATEMENT OF THE FACTS ................................................................................ 2

    A.   Procedural Background.............................................................................. 2

    B.   Discovery ................................................................................................... 3

    C.   The Parties' Mediation.............................................................................. 4

    D.   The Proposed Settlement .......................................................................... 5

        1.   The Settlement Class........................................................................ 5

        2.   Monetary Relief for Settlement Class Members............................ 5

        3.   *Cy Pres* Distributions ..................................................................... 7

        4.   Class Release ................................................................................... 7

        5.   Class Representative Service Award ............................................. 7

        6.   Attorneys' Fees and Costs .............................................................. 8

        7.   Administration and Notice.............................................................. 8

III.  ARGUMENT............................................................................................................ 9

    A.   The Settlement Approval Process............................................................. 9

    B.   The Settlement Resulted From Arm's Length Negotiations And Is Not The Product of Collusion ................................................................ 13

    C.   The Settlement is Within the "Range of Reasonableness" for Preliminary Approval............................................................................. 14

        1.   The Settlement Provides Substantial Relief for Class Members, Particularly in Light of the Uncertainty of Prevailing on the Merits............................................................. 14

            a.   The Monetary Amount offered in Settlement.................. 14

            b.   The Strength of Plaintiff's Case....................................... 16

        2.   Continued Litigation is Likely to be Complex, Lengthy, and Expensive .......................................................................... 19

        3.   There is Currently No Opposition to the Settlement .................. 19

        4.   Class Counsel Strongly Endorse the Settlement......................... 20

**TABLE OF CONTENTS**
**(continued)**

5.     The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval ................................. 20

D.     Provisional Certification of the Settlement Class is Appropriate ........... 21

1.     The Rule 23(a) Requirements are Satisfied ................................ 21

2.     The Rule 23(b)(3) Requirements are Satisfied ........................... 23

E.     The Proposed Notice Program Is Constitutionally Sound ...................... 24

IV.     CONCLUSION .............................................................................................. 25

CERTIFICATE OF SERVICE ................................................................................... 27

**Cases**

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*,
 No. 09 C 910, 2011 U.S. Dist. LEXIS 48323
 (N.D. Ill. May 5, 2011) ................................................................................ 18

*Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*,
 No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219
 (N.D. Ill. July 26, 2011) .......................................................................... 11, 12

*Amchem Prods. v. Windsor*,
 521 U.S. 591 (1997) ..................................................................................... 23

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
 616 F.2d 305 (7th Cir. 1980) ...................................................... 10, 11, 12, 15

*Boggess v. Hogan*,
 410 F. Supp. 433, 438 (N.D. Ill. 1975) ........................................................ 10

*Chapman v. First Index, Inc.*,
 No. 09 C 5555, 2014 U.S. Dist. LEXIS 27556
 (N.D. Ill. March 4, 2014) ............................................................................. 17

*Connor v. JPMorgan Chase Bank, N.A.*,
 No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015) ................................ 16

*Felzen v. Andreas*,
 134 F.3d 873 (7th Cir. 1998) ........................................................................ 10

*G.M. Sign, Inc. v. Brinks Manufacturing Co.*,
 No. 09 C 5528, 2011 U.S. Dist. LEXIS 7084
 (N.D. Ill. March 4, 2014) ............................................................................. 18

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
 No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869
 (N.D. Ill. Aug. 20, 2009) .............................................................................. 22

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
 270 F.R.D. 330 (N.D. Ill. 2010) ................................................................... 14

*In re Mexico Money Transfer Litig.*,
 164 F. Supp. 2d 1002 (N.D. Ill. 2000) ......................................................... 20

*Isby v. Bayh*,
 75 F.3d 1191 (7th Cir. 1996) ................................................................... 10, 12

*Kessler v. Am. Resorts International's Holiday Network, Ltd.*,
 Nos. 05 C 5944 & 07 C 2439,
 2007 U.S. Dist. LEXIS 84450
 (N.D. Ill. Nov. 14, 2007) .............................................................................. 12

*Kramer v. Autobytel*,
 No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800
 (N.D. Cal. Jan. 27, 2012) ............................................................................. 15

*Malta v. Fed. Home Loan Mortg. Corp.*,
   No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731
   (S.D. Cal. Feb. 5, 2013) ...................................................................... 15

*Mars Steel Corp. v. Cont'l Ill. Nat. Bank and Trust Co. of Chicago*,
   834 F. 2d 677, 684 (7th Cir. 1987) ...................................................... 13

*McCabe v. Crawford & Co.*,
   210 F.R.D. 631 (N.D. Ill. 2002)............................................................ 22

*McKinnie v. JP Morgan Chase Bank, N.A.*,
   678 F. Supp. 2d 806 (E.D. Wis. 2009).................................................. 20

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950).............................................................................. 24

*Murray v. New Cingular Wireless Servs.*,
   232 F.R.D. 295 (N.D. Ill. 2005)............................................................ 23

*Parker v. Risk Mgmt. Alternatives, Inc.*,
   206 F.R.D. 211 (N.D. Ill. 2002)............................................................ 22

*Phillips Randolph Enters., LLC v. Rice Fields*,
   No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027
   (N.D. Ill. Jan. 11, 2007) ....................................................................... 18

*Redman v. Radioshack Corp.*,
   No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880
   (N.D. Ill. Feb. 7, 2014) ......................................................................... 12

*Sadowski v. Med1 Online, LLC*,
   No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766
   (N.D. Ill. May 27, 2008) ....................................................................... 23

*Savanna Group, Inc. v. Trynex, Inc.*,
   No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277
   (N.D. Ill. Jan. 4, 2013) ......................................................................... 17

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................... 19

*Spokeo v Thomas Robbins*,
   11-56843 (9th Cir. 2014) ....................................................................... 18

*Steinfeld v. Discover Fin. Svcs.*
   12-cv-01118 (N.D. Cal.) ........................................................................ 16

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ................................................................ 14

**Statutes**

Telephone Consumer Protection Act,
   47 U.S.C. § 227(b)(1)(A).......................................................................... 1

**Treatises**

4 *Newberg on Class Actions* §§ 11.25 and 11.41 (4th ed. 2002)................................. 9, 10, 11, 13

*Manual for Complex Litig.,*
   at §§ 13.14, 21.312, 21.632, and 21.633 (Fourth) (2004)....................................... 10, 12, 21, 24

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    <u>INTRODUCTION</u>

Plaintiff respectfully moves the Court for preliminary approval of the nationwide class action settlement ("Settlement") reached between Plaintiff Sheila Allen ("Plaintiff" or "Allen") and Defendant JPMorgan Chase Bank, N.A ("Defendant" or "Chase").  The proposed Settlement would resolve all claims in the above-entitled action.  Plaintiff alleges that Defendant called Plaintiff and Class Members on their cell phones through the use of an automatic telephone dialing system or by using an artificial or prerecorded voice without Plaintiff's or Class Members' prior express consent, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A).

Under the Settlement Agreement, Defendant is required to pay $10,200,000 into a settlement fund ("Fund"), an amount on par with recently approved similar class settlements involving claims under TCPA, and to which Chase itself is a party.  Eligible Class Members who file qualified claims will receive a pro rata cash payment from this Fund.  Not a single penny of the Fund will revert back to Defendant.

This action involves sharply opposing positions on many issues, including three critical ones.  First, the parties disagree whether, going forward, the Federal Communications Commission (the "FCC") rulings on pending petitions on the definition of an autodialer and whether there is a safe harbor for calls to reassigned numbers will entirely foreclose Plaintiff's and Class Members' TCPA claims[1].  Plaintiff believes that the FCC will reject the industries petitions, but acknowledges the uncertainty these petitions create.

---

[1] *See Petition of United Healthcare Services, Inc. for Expedited Declaratory Ruling*, CG Docket No. 02-278, dated January 16, 2014; *Petition for Rulemaking of ACA International*, CG Docket. No. 02-278, dated January 31, 2014.

Second, the parties disagree whether the claims of certain Class Members are subject to arbitration agreements that Chase maintains would extinguish Class Members' ability to pursue their TCPA claims outside of the arbitration process. Finally, the parties also disagree as to whether a class can be certified because of what Chase maintains are inherently individual issues among Class Members. Despite these disagreements, the parties reached settlement after participating in robust mediation before the Honorable Wayne R. Andersen (Ret.) of JAMS and subsequent settlement discussions.

With this motion, Plaintiff seeks preliminary approval of the Settlement and provisional certification of a nationwide class for purposes of providing the Class with notice of the Settlement and an opportunity to opt-out, object, or otherwise be heard. The proposed Settlement satisfies all criteria for preliminary settlement approval under Seventh Circuit law.

## II.  STATEMENT OF THE FACTS

### A.  Procedural Background

On November 19, 2013, Plaintiff filed an amended class action complaint against Chase, JP Morgan Chase & Co., and Chase Auto Finance Corp. Dkt. No. 5. Allen alleged that defendants made approximately 80 calls in under three months using an automatic dialing system or an artificial or prerecorded voice to her cell phone. Dkt. No. 5, ¶ 10. On May 12, 2014, after dismissal of two defendants, Allen filed her Second Amended Class Action Complaint (SAC) naming Chase as the sole defendant. Dkt. No. 26-1.

On June 4, 2014, Chase filed its Answer and Affirmative Defenses to Allen's Second Amended Complaint. Dkt. No. 35. Therein, Chase asserted defenses including that it had "prior express consent" within the meaning of the TCPA for all calls allegedly placed to Allen and the

putative class and a constitutional challenge that TCPA damages violate the due process clause. Dkt No. 35, p. 14-15

On July 21, 2014, Chase filed a motion to stay this case under the primary jurisdiction doctrine pending resolution of petitions currently before the Federal Communications Commission. Dkt. No. 36. This motion was denied. Dkt. No. 40.

On July 23, 2014, Judge Grady ordered Chase to provide Plaintiff with the outstanding discovery and set an evidentiary hearing on the class discovery for October 8, 2014 requiring Chase to provide a witness to testify as to any difficulties in providing Plaintiff the outstanding discovery. *Id*.

On September 16, 2014, this case was assigned to Judge Tharp who struck the evidentiary hearing and ordered a status report to be filed. As explained below, the evidentiary hearing was not needed at the time as Chase was supplementing its discovery responses as set forth below.

### B.   Discovery

The Parties undertook extensive discovery, beginning with the exchange of initial disclosures pursuant to Fed. R. Civ. P. 26(a). Thereafter, the Court ordered that discovery be bifurcated and the parties concentrated on class discovery. Dkt. No. 23.

Plaintiff promulgated written discovery requests to Chase, including interrogatories and requests for production of documents. Throughout the discovery process, Counsel held several discovery conferences with Chase's counsel related to discovery and other issues. The discussions were thorough and, at many points, contentious, as the parties addressed all facets of discovery as well as their respective views on class certification and of Plaintiff's class TCPA

claims.[2]  On July 23, 2014, the Court ordered defendant to produce certain discovery information requested by Plaintiff.  Dkt. No. 40.  Chase responded to written discovery and produced thousands of pages of relevant documents.  Over a six-month period, Chase produced, and Plaintiff analyzed, the thousands of pages of documents requested.

In addition to this substantial production of written discovery, Plaintiff noticed the deposition of individuals designated by Chase under Fed. R. Civ. P. 30(b)(6).  Plaintiff took the out of town depositions of several individuals employed by Chase who were knowledgeable about the actions underlying the SAC, including Chase's practices and procedures related to its calling efforts.

### C.    The Parties' Mediation

On January 21, 2015, the parties participated in an in-person mediation session before the Honorable Wayne R. Andersen (Ret.) of JAMS.[3]  Prior to the mediation, Chase and Plaintiff submitted detailed mediation briefs to Judge Andersen, setting forth their respective views on the strengths of their cases.[4]  In connection with its mediation memorandum, Plaintiff's counsel obtained and submitted the expert report of Robert Biggerstaff relating to the methodology of analyzing and searching Chase's database in relation to the Class.[5]  At mediation, the parties discussed their relative views of the law and the facts and potential relief for the proposed Class.[6]

Counsel exchanged counterproposals on key aspects of the Settlement.  At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length.[7]  Although

---

[2] *See* Declaration of Keith J. Keogh ("Keogh Decl.") attached as Exhibit 1, ¶ 22.
[3] *Id.* ¶ 23.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *See Id.* ¶¶ 22-25.

the mediation was very productive, it ended without a resolution. It was not until a month of additional negotiations that the parties reached an agreement in principal on February 19, 2015.[8] The parties spent the next two and half months negotiating the terms of the settlement agreement.[9]

### D. The Proposed Settlement

The Settlement's details are contained in the Agreement signed by the parties, a copy of which is attached as Exhibit 2. (Agreement). For purposes of preliminary approval, the following summarizes the Agreement's terms:

#### 1. The Settlement Class

The Settlement Class is defined as follows:

> All persons within the United States who received a non-emergency telephone call from Chase's auto subline of business to the called party's cellular telephone, made through the use of any automatic telephone dialing system or an artificial or prerecorded voice, on or after November 18, 2009 through and including the date of entry of the Preliminary Approval Order.

Agreement § II.A.26.[10] Chase has informed Class Counsel that the Class is comprised of approximately 2,250,154 people throughout the United States.

#### 2. Monetary Relief for Settlement Class Members

The Settlement requires Chase to create a non-reversionary Settlement Fund of $10,200,000. Agreement § III.C.1. Out of this Fund, eligible Settlement Class Members who file a qualified claim will receive a Cash Award in the form of a cash payment. *Id.* § III.F.1. The amount of each Class Member's Award will be based on a *pro rata* distribution, depending

---

[8] *Id.*, ¶ 24.

[9] *Id.*

[10] Excluded from the Settlement Class are the Judge to whom the Action is assigned and any member of the Judge's staff and immediate family. *Id.*

on the number of valid and timely claims. *Id.* §§ III.F.1; II.F.2. No amount of the Settlement Fund will revert to Defendant. *Id.* § III.G.3. While it is not possible to predict the precise amount of each Award until all claims have been submitted, Class Counsel, based on their experience in similar TCPA class actions, estimate awards in the range of $45 to $55 after deductions for Court-approved attorneys' fees and costs, Court-approved incentive awards to the Plaintiff, and costs of notice and claims administration.

Checks for Cash Awards will be mailed within 45 days of the Effective Date[11]and will be valid for 120 days from the date of the check. *Id.* § III.G.1. If, after the expiration date of the settlement payment checks to Class Members, there remains money in the Settlement Fund in an amount that is sufficient to pay at least $10 to each Settlement Class Member who cashed his or her original check, a Second Distribution shall be made to those Settlement Class Members on a pro-rata basis. *Id.* § III.G.2. The Second Distribution checks shall be mailed within 90 days after expiration of the original checks and shall be valid for 120 days. *Id.*

In order to exercise the right to obtain the relief outlined above, Class Members need only complete a simple, one-page claim form and provide it to the Claims Administrator via the Settlement Website or by mail. *Id.* § II.A.2; III.F.1; III.F.2.2. Class Members shall be notified of the settlement 45 days after an order granting preliminary approval issues (*id.* § III.B.1), and will have 60 days following this notification to submit their claim forms. *Id.* If Class Members wish to object to or opt out of the Settlement, they will have 60 calendar days from the Settlement Notice Date—*i.e.* 105 days from the Preliminary Approval Order—to do so. *Id.* §§ III.B.1; III.K.1.

---

[11] The Effective Date is the fifth business day after 1) the execution of the agreement; 2) the Court enters the Final Approval Order, without material change; and 3) final disposition of any related appeals. Agreement § II.A.11.

### 3. *Cy Pres* Distributions

Money in the Settlement Fund that remains undistributed after the Second Distribution, including money not distributed because there is not enough to justify a Second Distribution, will be distributed *cy pres* to a charity mutually agreed upon by the parties, subject to this Court's approval. *Id.* § III.G.3. Accordingly, no amount of the Settlement Fund will revert to Defendants. *Id.* §§ III.C.1; III.G.3. The parties anticipate providing a suggestion for the court prior to or at the hearing on preliminary approval.

### 4. Class Release

In exchange for the benefits allowed under the Settlement, Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release all claims "(a) that arise out of or are related in any way to the use by the Released Parties or anyone on their behalf of an "automatic telephone dialing system" and/or "an artificial or prerecorded voice" to make "calls" to cellular telephones… in connection with efforts to contact Settlement Class Members and/or (b) that arise out of or relate in any way to the administration of the Settlement." *Id.* § III.H.

### 5. Class Representative Service Award

The parties did not agree on an incentive award for Plaintiff. Instead, the Settlement Agreement provides that Plaintiff will petition the Court for an incentive fee. *Id.* § III.J. The Service Award shall be paid out of the Settlement Fund and is subject to this Court's approval. *Id.* In light of the fact that Plaintiff allegedly received over 50 calls to her cellular telephone, she was not a customer of Chase, that she received calls after Chase was informed that it was calling the wrong number and Plaintiff passed on an individual offer to settle her case, Plaintiff will request an incentive award of $25,000.00. The class notice will advise the class of Plaintiff's request.

### 6.    **Attorneys' Fees and Costs**

The parties also did not agree on an attorney fees for Plaintiff's counsels.  Prior to the Final Approval hearing, Class Counsel will apply to the Court for an award of attorneys' fees and costs.  *Id*. § III.I.  As will be addressed in Class Counsel's motion for attorneys' fees, courts in this district commonly award 33% in common fund TCPA class settlements and it is appropriate to compensate Class Counsel in this amount here for the work they have performed in procuring a record-setting settlement for the Class, as well as the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, overseeing settlement implementation and administration, assisting Class Members, and obtaining dismissal of the action.  It should be noted, however, that the enforceability of the Settlement is not contingent on Court approval of an award of attorneys' fees or costs.  *Id*.  Further, the notice to the class will inform the class members that Plaintiff's counsel will seek 33% of the class benefit.

### 7.    **Administration and Notice**

All costs of notice and claims administration shall be advanced by Chase, credited against the Settlement Fund.  *Id*. §§ II.A.28; III.C.1.  The Claims Administrator will be Kurtzman Carson Consultants ("KCC"), subject to this Court's approval.  *Id*. § II.A.4.  The Claims Administrator shall administer the Settlement, which includes the following duties: (1) issuing Class Notice and claim forms; (2) setting up and maintaining the settlement website; (3) accepting claim forms; (4) and issuing settlement payments.  *Id*. §§ II.A.4; III.D; III.E.1; III.E.2. Defendant has agreed to cooperate with the Claims Administrator to ensure that it has all of the information it needs to perform these tasks.  *Id*. § III.D.  Chase shall be responsible for timely compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715(b). *Id*. §§ II.A.1; IIII.E.3.

Within 30 days following Preliminary Approval, Chase will provide the Class List to the Claims Administrator. *Id.* § III.D. Within forty-five (45) of the entry of Preliminary Approval Order, the Claims Administrator will issue the Class Notice (Exhibit 2 to the Agreement) via mail or email to all Class Members for whom Chase possesses contact information. *Id.* § III.B.1.

Further, the Claims Administrator will establish and maintain a Settlement Website. *Id.* § III.E. The Settlement Website will provide for online submission of claims and will also include general information such as the Settlement Agreement; Website Notice (Exhibit 3); the Preliminary Approval Order; Claim Form (Exhibit 1) for anyone wanting to print a hard copy of and mail in the Claim Form; the operative Complaint; and any other materials the Parties agree to include. *Id.* §§ III.F.2; II.A.28; Exhibit 3.

To ensure the correct identity of Class Members, Chase has the right to research and review the submitted Claim Forms and to instruct the Claims Administrator to deny Claims upon good faith belief that such claim is fraudulent. *Id.* § III.F.2. However, Class Counsel shall be able to dispute any denial. *Id.* Any disputes as to the denial of Claims that cannot be resolved between Chase and Class Counsel shall be submitted to mediation before Hon. Judge Wayne Andersen (Ret.). *Id.*

## III.    ARGUMENT

### A.    The Settlement Approval Process

Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion" There is usually a presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experiences." H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995

U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995); *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975).

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Class Members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;

> (2)     Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3)     A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentator Professor Newberg, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 *Newberg* § 11.25.

With this motion, Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is merely to determine whether the settlement is within the "range of possible approval," and thus whether notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile. *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219, at *32-33 (N.D. Ill. July 26, 2011) (citing *Armstrong*, 616 F.2d at 314). Accordingly, at the preliminary approval stage, courts need not "conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *Id.*

When determining whether a settlement is ultimately fair, adequate, and reasonable at the "final approval" stage, courts in this Circuit consider the following factors:

> (1) the strength of plaintiffs' case compared to the terms of the proposed settlement;
>
> (2) the likely complexity, length, and expense of continued litigation;
>
> (3) the amount of opposition to settlement among affected parties;
>
> (4) the opinion of competent counsel; and

> (5) the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199. While not required, courts often consider these factors to determine whether the settlement falls within the range of possible approval at the preliminary approval stage. *See, e.g., Am. Int'l Group*, 2011 U.S. Dist. LEXIS 84219, at *33 ("[A]lthough neither the Federal Rules of Civil Procedure nor binding case law requires it, courts in this district have performed 'a more summary version' of the final fairness inquiry at the preliminary approval stage."); *Kessler v. Am. Resorts International's Holiday Network, Ltd*., Nos. 05 C 5944 & 07 C 2439, 2007 U.S. Dist. LEXIS 84450, at *17 (N.D. Ill. Nov. 14, 2007) ("Although this [fair, reasonable, and adequate] standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase.") In reviewing these factors, courts view the facts "in a light most favorable to the settlement." *Redman v. Radioshack Corp*., No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880, at *9 (N.D. Ill. Feb. 7, 2014) (citing *Isby*, 75 F.3d at 1199). In addition, courts "should not substitute [their] own judgment as to the best outcomes for litigants and their counsel." *Id.* (citing *Armstrong*, 616 F.2d at 315).

Granting preliminary approval of this Settlement will allow all Class Members to receive notice of the proposed Settlement's terms and the date and time of the final Settlement approval hearing, at which Class Members may voice approval of or opposition to the Settlement, and at which the parties and Class Members may present further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement. *See Manual for Compl. Lit.*, at §§ 13.14, § 21.632

**B.** **The Settlement Resulted From Arm's Length Negotiations And Is Not The Product of Collusion**

As a leading treatise on class action jurisprudence explains, "decisions indicate that the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." Newberg, §11.51. The requirement that a settlement be fair is designed to protect against collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat. Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approved settlement upon finding of no "hanky-pank" in negotiations). There usually is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's length negotiations. Newberg, §11.42.

As detailed above, the Settlement is the result of a day-long mediation before Judge Andersen (Ret.), an additional month of negotiations and was the result of extensive, arm's-length negotiations between attorneys experienced in the litigation, certification, trial and settlement of nationwide class actions. Counsel for both parties are also experienced in litigating TCPA claims and understand the legal and factual issues involved in this case. In the course of negotiating the Settlement, the parties exchanged detailed mediation briefs and engaged in a mediation session before an experienced former federal judge.

Also, as detailed above, Class Counsel thoroughly investigated and analyzed Plaintiff's TCPA claims and conducted written and oral discovery, including production of an expert report, to identify the class and prosecute the class claims. The discovery consisted of written discovery requests, including Defendant's production of thousands of pages of relevant discovery, and out of town depositions of multiple Chase employees. Through this discovery, Class Counsel learned information regarding Chase's policies and procedures in making calls to cell phones and in obtaining and tracking consent to make such calls. Class Counsel also learned information

regarding the number of telephones that Chase called and the number of calls made as they relate to the claims in this case.

As a result, Class Counsel were well-positioned to evaluate the strengths and weaknesses of their case, as well as the appropriate basis upon which to settle it.

**C.      The Settlement is Within the "Range of Reasonableness" for Preliminary Approval**

The Settlement meets all of the factors relevant to final approval, and thus the Settlement should be preliminarily approved.

**1.      The Settlement Provides Substantial Relief for Class Members, Particularly in Light of the Uncertainty of Prevailing on the Merits**

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

**a.      The Monetary Amount offered in Settlement**

The Settlement requires Defendants to pay $10,200,000 into a Settlement Fund. Out of this Fund, all eligible Class Members will receive their *pro rata* share of cash payments. Agreement § III.F.1; III.F.2. The Settlement Fund is non-reversionary, ensuring that all or nearly all monetary benefits will go to Class Members—none of the Settlement Fund will return to Defendants. The Settlement Fund created by this Settlement is comparable to similar TCPA settlements, including one to which Chase is a party that was given final approval. Furthermore, the monetary amount achieved by the Settlement is an outstanding result for Class Members,

particularly because TCPA damages are purely statutory damages in that Class Members have hard to quantify out-of-pocket losses or other economic harm.

Class Counsel acknowledge that the $10,200,000 Fund does not constitute the full measure of statutory damages potentially available to the Class. This fact alone, however, should not weigh against preliminary approval. "Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. The Settlement was reached after extensive factual investigation and discovery of the claims and issues and after taking into consideration the risks involved in the actions, after extensive arm's-length negotiations presided by an experienced mediator and former judge. Further, the Settlement compares favorably to other TCPA class actions settlements. Courts have approved other TCPA class action settlements involving similarly large putative classes that achieved much smaller *pro rata* monetary recoveries.[12]

Indeed, courts have found similar TCPA class action settlements to meet the standards for preliminary approval and, as well as final approval. *Connor v. JPMorgan Chase Bank, N.A.,*

---

[12] *See, e.g., Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Malta v. Fed. Home Loan Mortg. Corp.,* No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval granted at Dkt. No. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-00248, Dkt. Nos. 116 & 137 (S.D. Cal. Sept. 28, 2012) (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D. Wash. Oct. 21, 2011) (approving $5.5 million settlement to benefit 18.1 million class members).

No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015)[13] (entering final approval of settlement providing slightly less than 2.5 million accounts for $11,268,058); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Holderman J.) (Feburary 12, 2015 granting final approval were each class member would be awarded $39.66); and S*teinfeld v. Discover Fin. Svcs*. 12-cv-01118 (N.D. Cal.) (Final Approval of $46.98 to each claimant)

The key here is that the Settlement provides class members with real monetary relief, despite the fact that this is a purely statutory damages case in which class members incurred nominal economic damages or whose actual damages (such as to the invasion of their privacy) are difficult or impossible to quantify.

For all of the above reasons, the monetary amount recovered through the Settlement—on par with TCPA settlements found to be fair, adequate, and reasonable—is a great result for the Class.

**b.      The Strength of Plaintiff's Case**

Plaintiff continues to believe that her claims against Defendant have merit and that she would make a compelling case if her claims were tried. Nevertheless, Plaintiff and the Class would face a number of difficult challenges if the litigation were to continue.

First, the parties disagree whether over the likelihood that the FCC rulings on pending petitions[14] will entirely foreclose Plaintiff's and Class Members' TCPA claims regarding calls made to a wrong party or whether the definition of an autodialer is modified to exempt Chase's

---

[13] *Connor v. JPMorgan Chase Bank, N.A.*, No. 10 CV 01284 GPC BGS, Final Judgment and Order of Dismissal, Dkt No. 160 (S.D. Cal. Feb. 5, 2015)
[14] *See Petition of United Healthcare Services, Inc. for Expedited Declaratory Ruling*, CG Docket No. 02-278, dated January 16, 2014; *Petition for Rulemaking of ACA International*, CG Docket. No. 02-278, dated January 31, 2014

system.    Plaintiff believes that the FCC will reject the petitions, but acknowledges the uncertainty these petitions create.[15]

Chase maintains that the pending petitions, and forthcoming FCC rulings, create uncertainty as to whether Plaintiff and certain Class Members can recover at all.  In particular, a ruling by the FCC creating a safe harbor for calls made to wrong parties could potentially foreclose all claims relating to individuals who, like Allen, received calls made to wrong parties.

Second, Chase maintains that certain individuals within the class are Chase customers who are bound by arbitration agreements. Chase maintains that such agreements extinguish these individuals' ability to pursue their TCPA claims outside of the arbitration process.

Third, the parties also disagree as to whether a class can be certified because of what Chase maintains are inherently individual issues among Class Members. This includes whether certification would be appropriate in the face of issues relating to arbitration agreements and prior express consent.   While Plaintiff continue to believe that class certification would be achievable, Chase asserted that class certification would be inappropriate due to the question of whether Class Members consented to the calls at issue.  "Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case."  *Chapman v. First Index, Inc*., No. 09 C 5555, 2014 U.S. Dist. LEXIS 27556, at *6-7 (N.D. Ill. March 4, 2014) (citing cases).  For example, in *Savanna Group, Inc. v. Trynex, Inc.,* No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277, at *49 (N.D. Ill. Jan. 4, 2013), the court granted class certification and rejected the defendant's argument that questions of consent caused individual issues to predominate, noting that the defendant had not offered evidence tending to show that any

---

[15] Ex. 1, Keogh Decl. ¶ 28.

particular class member consented to the faxes at issue, whereas in *G.M. Sign, Inc. v. Brinks Manufacturing Company*, No. 09 C 5528, 2011 U.S. Dist. LEXIS 7084, at *7-10 (N.D. Ill. March 4, 2014), the court declined to certify a class, finding that the defendant offered evidence illustrating that consent could not be shown with common proof. If Chase were able to present convincing facts to support its position, there is a risk that the Court would decline to certify the class, leaving only the named Plaintiff to pursue her individual claims.

Fourth, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Finally, there remains a risk of losing a jury trial. And, even if Plaintiff did prevail at trial, any judgment could be reversed on appeal[16].

---

[16] There is also a risk that the Supreme Court will hold that statutory damage class actions lack Article III standing. This issue is before the Court in *Spokeo v Thomas Robbins*, 11-56843 (9th Cir. 2014) (cert. granted April 27, 2015). Because there are concrete damages to calling a persons' cellular telephone, Plaintiff does not believe that an adverse ruling in *Spokeo* would impact TCPA cases, but it is possible.

Despite these disagreements, the parties reached settlement after participating in robust mediation before the Honorable Wayne R. Andersen (Ret.) of JAMS. The Settlement provides substantial relief to Class Members without delay and is within the range of reasonableness, particularly in light of the above risks that Class Members would face in litigation.

### 2. Continued Litigation is Likely to be Complex, Lengthy, and Expensive

Litigation would be lengthy and expensive if this action were to proceed. Although the parties engaged in significant discovery efforts, continued litigation would involve extensive motions practice, including Plaintiff's motion for class certification. In addition, Defendant might bring a motion for summary judgment. The parties might also further engage additional experts to analyze Chase's call data. It is likely to be more than a year before the case would proceed to trial. And any judgment in favor of Class Members could be further delayed by the appeal process. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.")

### 3. There is Currently No Opposition to the Settlement

All parties favor settlement. But because notice has not yet been sent to the class, this factor cannot be fully evaluated prior to the final fairness hearing.

## 4. Class Counsel Strongly Endorse the Settlement

Class Counsel and Plaintiff strongly endorse this Settlement.[17] Class Counsel's opinion on the Settlement is entitled to great weight, particularly because: (1) Class Counsel are competent and experienced in class action litigation (particularly in similar TCPA class action cases)[18]; (2) Class Counsel engaged in formal and informal discovery and exhaustively evaluated the claims in the context of settlement negotiations[19]; and (3) the Settlement was reached at arm's length through negotiations between experienced counsel, after a robust mediation session before an experienced mediator and former judge.[20] *See McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). This factor therefore weighs in favor of preliminary approval.

## 5. The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval

The Settlement was informed by Class Counsel's thorough litigation and analysis of the factual and legal issues involved. Before and throughout the mediation process, Chase also voluntarily provided Class Counsel with, and Class Counsel reviewed, the information relating to the Class and other information necessary to confirm that the Settlement is fair, reasonable, and

---

[17] Ex. 1, Keogh Decl. ¶ 30.
[18] *Id.* ¶¶ 1-21.
[19] *Id.* ¶ 22.
[20] *Id.* ¶¶ 23-24.

adequate.[21]  Settlement negotiations were hard-fought at arm's length before an experienced

mediator and former federal judge.[22]  On January 21, 2015, the Parties engaged in robust

mediation before the Honorable Wayne R. Andersen (Ret.) of JAMS.  Thereafter, the parties

spent numerous hours negotiating the final settlement terms and drafting the Settlement

Agreement.[23]

Accordingly, the final terms of Settlement were agreed to only after Class Counsel

thoroughly vetted the claims and potential damages through the exchange of both informal and

formal discovery and participated in lengthy arm's-length negotiations.

### D.      Provisional Certification of the Settlement Class is Appropriate

For settlement purposes, Plaintiffs respectfully request that the Court provisionally certify

the Class defined in the Agreement.  Agreement § II.A.5.  Provisional certification for settlement

purposes permits notice of the proposed Settlement to issue to inform Class Members of the

existence and terms of the proposed Settlement, their right to be heard on its fairness, their right

to opt out, and the date, time and place of the formal fairness hearing.  *See Manual for Compl.

Lit.*, at §§ 21.632, 21.633.  Defendant has agreed to provisional certification of the Class, as

defined in the Agreement solely for purposes of this Settlement.  For the reasons set forth below,

provisional certification is appropriate under Federal Rule of Civil Procedure Rule 23.

### 1.      The Rule 23(a) Requirements are Satisfied

The numerosity requirement of Rule 23(a) is satisfied because the combined Class

consists of approximately 2.2 million people throughout the United States who received calls to

their cell phones by Defendant through the use of an automatic telephone dialing system or an

---

[21] *Id.* ¶ 25.

[22] *Id.* ¶ 23.

[23] *Id.* ¶ 24.

artificial or prerecorded voice, and joinder of all such persons is impracticable. *See McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002) (a class of forty or more is generally sufficient to establish numerosity). The commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class that center on Defendant's common practice of using an automated dialing system or an artificial or prerecorded voice to call Class Members on their cell phones. *See Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement."); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, *12 (N.D. Ill. Aug. 20, 2009) (finding the following common questions: "1) whether Defendant violated the TCPA by faxing advertisements without first obtaining express invitation or permission to do so; 2) whether Plaintiff and other class members are entitled to statutory damages; and 3) whether Defendants acts were 'willful' or 'knowing' under the TCPA and, if so, whether Plaintiff and other class members are entitled to trebled damages.") The typicality requirement is satisfied because Plaintiff's TCPA claims, which are based on Defendant's systematic use of automated calls to cell phones, arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker*, 206 F.R.D. at 213. The adequacy of representation requirement is satisfied because Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign,* 2009 U.S. Dist. LEXIS 73869, at *15-16. Further, Plaintiff is represented by qualified and competent counsel who have extensive experience and expertise in prosecuting complex class actions, including TCPA actions. *See id.*; Ex. 1, Keogh Decl.¶¶ 1-21.

## 2.    The Rule 23(b)(3) Requirements are Satisfied

The predominance requirement of Rule 23(b)(3) is satisfied because common questions comprise a significant aspect of the case and can be resolved for all Settlement Class members in a single adjudication. Common issues predominate here because the claims of the class members arise from Defendant's alleged common practice of using an automated dialing system or an artificial or prerecorded voice to contact consumers on their cell phones without their consent. *See Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766, *13 (N.D. Ill. May 27, 2008) (finding common issues such as "how numbers were generated from Defendant's database and whether Defendant's actions . . . violated the TCPA" to predominate, and that the issue of consent might be resolved through common proof such as "the source of the numbers" and "how Defendant selected who was to receive the [ ] faxes").

Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.") And, resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Sadowski*, 2008 U.S. Dist. LEXIS 41766, at *14 (quoting *Murray v. New Cingular Wireless Servs.*, 232 F.R.D. 295, 303 (N.D. Ill. 2005)) ("In consumer actions involving small individual claims, such as this one, class treatment is often appropriate because each member's damages 'may be too insignificant to provide class members with incentive to pursue a claim individually.'") For these reasons, certification of the Settlement Class for purposes of settlement is appropriate.

### E. The Proposed Notice Program Is Constitutionally Sound

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit., supra*, at § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the *Manual*, *supra*, at § 21.312, the settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Provide information regarding attorneys' fees;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedure for making inquiries.

The proposed forms of Notice, attached as Exhibit 2 and 3 to the Agreement, satisfy all of the criteria above. The Notice Plan provides for direct, individual notice via either email or mail.

Agreement § III.E.1.    For those individuals on the Class List for whom Chase does not have an email address, who have opted out of receiving emails, or whose email was returned undeliverable, the Claims Administrator shall send postcard notice.  *Id*.  Based on the class data, almost everyone will receive mailed noticed.  The Claims Administrator will utilize a reverse-phone look up process to identify the address of unknown third parties.  *Id*.  Before sending notice via mail, the Claims Administrator shall perform a National Change of Address Update to locate the most recent address for Class Members.  *Id*.

In addition, notice will be provided to Class Members online through the Settlement Website.  Agreement § III.E.2.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully request that the Court do the following:   (1) preliminarily approve the proposed Settlement as being within the range of possible final approval; (2) conditionally certify the Settlement Class and appoint Plaintiffs as class representatives; (3) appoint Class Counsel; and (4) approve the proposed Notice and Claims Program to be administered KCC; (5) direct that Notice be provided to the Class pursuant to the terms of the Agreement within forty-five (45) days following entry of the preliminary approval order; (6) establish a procedure for Class members to object to the Settlement or exclude themselves from the Class; (7) set a deadline sixty (60) days after the Notice Deadline, after which no one shall be allowed to object to the Settlement, exclude himself or herself from the Class or seek to intervene or submit a Claim; (8) pending final determination of whether the Settlement should be approved, stay all proceedings except those related to effectuating the Settlement; and (9) schedule a hearing to consider final approval of the Settlement, which shall be scheduled no earlier than one hundred thirty-five (135) days after the entry of the preliminary approval order.

Dated: May 12, 2015


Respectfully Submitted,



By: */s/ Keith J. Keogh*  _____

Keith J. Keogh
Timothy Sostrin
Michael Hilicki
Katherine M. Bowen
Keogh Law, Ltd.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
P: 312.726.1092

Alejandro Cafferelli, #06239078
Lorraine T. Peeters, #06290434
Caffarelli & Associates Ltd.
214 South Michigan Ave., Ste. 300
Chicago, IL 60604
Telephone: 312-763-6880
Email: alex@caffarelli.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2015, service of this document was accomplished via email and United States First Class Mail to the following: