| | | |
|---|---|---|
| SHEILA ALLEN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 13 CV 8285 |
| JP MORGAN CHASE BANK, N.A., | ) ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) | |

## ORDER

Plaintiff Sheila Allen represents a nationwide class of persons who allege that Defendant JP Morgan Chase Bank called them on their cell phones, using an automatic telephone dialing system or recording, without consent, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A). After extensive discovery, the parties negotiated a settlement. This court granted preliminary approval to the terms of the agreement on May 19, 2015 [58] and granted final approval on October 21, 2015 [93]. The court presented its reasons for that decision in open court, and summarizes those reasons in writing here. For these same reasons, the court approves Plaintiff Sheila Allen's motion [59] for an award of attorneys' fees, costs, and a service award.

## DISCUSSION

As amply explained in Plaintiff's motion for approval [83], the terms of this settlement were the result of a hard-fought, arm's-length negotiation, and the court found them fair, reasonable, and adequate. *See* FED. R. CIV. P. 23(e)(2). Under its terms, Defendant has paid $10,200,000 into a settlement fund which will provide pro rata payment to eligible class members who file claims. No funds will revert to Defendant. The court approved a plan of notice to class members that resulted in direct individual notice to the overwhelming majority (99.98%) of class members, more than 84,000 of whom have submitted claim forms. The parties anticipate that each qualified claimant will receive at least $70.00; if after initial

distribution, funds remain sufficient to permit a further distribution of at least $10.00 per class members, an additional payment will be distributed. Class members who do not opt out are deemed to have released claims that arise out of Chase's automatic dialing system calls, as well as claims that arise out of or relate to the administration of the settlement. The parties reached agreement only after a full-day session with an experienced private mediator followed by weeks of continued negotiations on their own. In

The agreement has been well received by class members, and appears on its face to be reasonable. The class appeared to have meritorious claims, but recovery was not at all free from doubt: Chase argued that certain FCC rulings defining an "autodialer" barred these claims; that Chase has a "safe harbor" for calls it made to reassigned numbers; and that a number of class members were barred from proceeding in court by arbitration provisions. Chase challenged class representative Sheila Allen's own claim on the basis that it had "prior express consent" for those calls within the meaning of the TCPA.

In a class of 2,087,559 members, only four class members timely objected to the proposed resolution (two of whom later withdrew their objections), and another 43 requested exclusion from the settlement, while 84,727 have submitted claims for recovery under the settlement. The expected recovery of $70.25 per claimant is consistent with the amounts recovered in similar Telephone Consumer Protection Act (TCPA) class actions. *See*, *e.g.*, *In re Capital One Telephone Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789–90 (N.D. Ill. 2015) (granting final approval where recovery per claimant was $34.60); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, *10–11 (N.D. Cal. Aug. 29, 2014) (granting final approval where recovery per claimant was estimated at $20 to $40). Although Objectors argued that class members should have been compensated on a per-call basis, rather than receive a *pro rata* share of the award, this court is not persuaded. Objectors' proposed method of apportioning damages would require factual inquiry into millions of individuals' interactions with Defendant, which would quite simply be unfeasible. As Plaintiffs' counsel concedes, a number of those individuals

may have signed arbitration agreements that would preclude any recovery in a court action. This settlement obviates the need for individual inquiry and provides relief to any class member who responds to the notice.

The court is satisfied, as well, that the method for providing notice to class members was reasonable and effective. *See* FED. R. CIV. P. 23(e)(1). The individual notice procedure resulted in contact with nearly all of the settlement class members. Only 43 of the millions of class members contacted chose to opt out. The 60-day notice period for objections and opt-outs was also was sufficient under Circuit precedent. *See Gautreaux v. Pierce*, 690 F.2d 616, 632 n. 17 (7th Cir. 1982) ("[W]e are unpersuaded that the 21-day notice period . . . [was] inadequate under" Rule 23).

Objectors urge that the release resulting from this settlement is overbroad. Again, the court disagrees. The proposed settlement provides for the release of claims arising from the use "of an automatic telephone dialing system and/or an artificial or prerecorded voice to make calls to a cellular telephone," as well as claims arising from the settlement. (Pl.'s Mot. for Settlement, Doc. 83, Ex. 1 at 15.) That release language plainly applies only to the species of claim brought in this action and does not jeopardize any claims unrelated to the allegations of the complaint..

Objectors also took issue with a possible future *cy pres* distribution of the settlement fund's remainder—a distribution contemplated only if two attempts to distribute the award among those class members who filed claim forms but did not cash their checks prove unsuccessful. This approach, however, "is well established." *Glen Ellyn Pharmacy, Inc. v. LaRoche-Posay, LLC*, No. 11 C968, 2012 WL 619595, *1 (N.D. Ill. Feb. 23, 2012) (citing *In re Folding Carton Antitrust Litig.*, 744 F.2d 1252, 1254 (7th Cir. 1984), and *Houck on behalf of U.S. v. Folding Carton Admin. Comm.*, 881 F.2d 494, 496–97 (7th Cir. 1989)). Objector Rhodes suggested a lower minimum threshold value ($2) for a further distribution to claimants, but his proposal was no less arbitrary than the minimum dollar value ($10) agreed to in the settlement.

It is costly to issue checks, and, as Plaintiffs' counsel observes, the smaller the check, the less likely it is that class members will actually cash that check and benefit from the settlement.

Objectors have suggested that the Supreme Court's grant of certiorari in *Spokeo, Inc. v. Robins*, *see* 135 S. Ct. 1892 (2015), militates in favor of entering a stay of this case and postponing final approval, if any, until after the Supreme Court considers that challenge. This objection is particularly puzzling. As Plaintiffs' counsel and Defendant's counsel point out, the *Spokeo* case puts the class at some risk. Should the Justices reverse the Ninth Circuit's holding in that case, *see Robins v. Spokeo*, Inc., 742 F.3d 409 (9th Cir. 2014), some class members in *this* case (including some Objectors themselves) who have no provable damages may be barred from recovering anything. The court's decision not to stay final approval is in Objectors' and the other class members' best interests.

Several remaining objections are easily dispatched. Objector Jabrani argued that the settlement should include compensation on a per-text-message basis; making the appropriate determinations would require expensive effort, however, and class counsel points out that it appears Jabrani himself did not receive any text messages from Defendant at all. Objector Sberna proposed that the settlement should provide for an offset to any debts owed by class members to Defendant. In the court's view, this proposal would essentially create a subclass; moreover, many class members did not owe Defendant any debt at all, and some debts that class members do technically owe Chase may no longer be collectable at all, due to limitations periods having run. In any event, any class member who believes he or she could recover substantially more money or greater relief on his/her own or was free to opt out of this settlement, and some did. The court recognizes that any settlement is a compromise, and that it is always possible to propose terms that might be more attractive to certain class members. The court's role is only to determine whether the settlement that has been proposed is fair and reasonable, and concludes that this one is—particularly in light of the facts that several class

members' (including some Objectors') claims might be subject to arbitration, and that some class members may have consented to calls from Defendant.  .

Finally, Objectors protested that the attorneys' fees award of up to $3,399,966, which is one-third of the total settlement fund amount of $10.2 million, is unreasonable.  *See* FED. R. CIV. P. 23(h).  They proposed the use of a lodestar formula instead.  In this circuit, courts setting attorneys' fees in class actions attempt to "approximate the market rate that prevails between willing buyers and willing sellers of legal services."  *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (citations omitted).  "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund."  *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (citations omitted).  While "the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court," *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994), "[t]he use of a lodestar cross-check has fallen into disfavor" in this Circuit.  *Beesley v. Int'l Paper Co.*, No. 3:06-cv-703, 2014 WL 375432, *3 (S.D. Ill. Jan. 31, 2014) (citing *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979–80 (7th Cir. 2003) ("Inefficient conduct of the litigation therefore does not afford any reason to reduce class counsel's percentage of the fund that their work produced.")).

Objectors are troubled by the percentage chosen in this case, where counsel expect to recover one-third of the award as an attorneys' fee.  *In re Capital One* was a class action in this district alleging the same statutory violation as alleged here; in that case, the court awarded a percentage formula rather than a lodestar, "consistent with the normal practice in consumer class actions."  80 F. Supp. 3d at 795.  Engaging in an in-depth analysis of the risks inherent to the litigation, class counsel's work, and existing empirical research on class settlements, the court concluded that class members would have negotiated a fee of approximately 20 to 24 percent of the settlement fund, with a downward scaling fee arrangement as the fund increased in value.  *Id.* at 796–809.  The per-class member recovery in that case was much smaller however, and the settlement fund was $75.5 million, arguably making a lower fee percentage

appropriate.  In *Silverman*, in contrast, the Court of Appeals approved an attorneys' fee award of 27.5% of the $100 million settlement, observing:  "It does not necessarily follow that 27.5% is legally excessive. . . . The district judge did not abuse her discretion in concluding that the risks of this suit justified a substantial award, even though compensation in most other suits has been lower."  739 F.3d 956, 958.

With a settlement fund here of $10.2 million, a 33.33 percent fee for class counsel is reasonable, especially since (as with other TCPA litigation) this was a case with some substantial risk of non-recovery for the class.  Plaintiff and Defendant cited eleven other TCPA class actions in this district in which the district court has approved a one-third fee arrangement, a satisfactory indication that the award requested here is consistent with the market.  (*See* Mem. of Law in Supp. of Attorneys' Fees, Doc. 59, 10–11.)  This award is also in line with binding circuit precedent.  "In consumer class actions, where the percentage of class members who file claims is often quite low . . . the presumption should we suggest be that attorneys' fees awarded to class counsel should not exceed a third or at most half of the total amount of money going to class members and their counsel."  *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014).  The court also notes there appears to be nothing collusive about the fee award:  the parties did not negotiate away Defendant's right to object to that award.  Nor did the parties negotiate the class representative service award Plaintiff Allen has requested.  Ms. Allen allegedly received more than 50 calls to her cell phone, though she was not a customer of Chase, and received calls even after informing Chase that it was calling the wrong number.  Ms. Allen declined to settle her individual case, instead pursuing recovery for the class as a whole. Her request for $25,000 as an incentive for this work is reasonable and is also approved.

The court stands by its determination that the proposed settlement is reasonable. Plaintiff's motion for attorney's fees, costs and a service award [59] is granted.

ENTER:

Dated:  November 3, 2015

_____
REBECCA R. PALLMEYER
United States District Judge